IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| FRED MEYER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-848-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| TEAMSTERS LOCAL 206, | ) | |
| | ) | |
| Defendant. | ) | |

Daniel R. Barnhart
Bullard Smith Jernstedt Wilson
1000 S.W. Broadway, Suite 1900
Portland, Oregon  97205

     Attorney for Plaintiff

Paul C. Hays
Ping Tow-Woram
Carney, Buckley, Hays & Marsh
811 S.W. Naito Parkway
Portland, Oregon  97204-3330

Page 1 - OPINION AND ORDER

David A. Rosenfeld
Weinberg, Roger & Rosenfeld
1001 Marina Village Parkway, Suite 200
Alameda, California  94501-1091

      Attorneys for Defendant

KING, Judge:

      Plaintiff Fred Meyer, Inc. brings suit under the Labor Management Relations Act and Federal Arbitration Act asking the court to vacate an arbitrator's opinion interpreting the Collective Bargaining Agreement ("Agreement") between Fred Meyer and Teamsters Local 206 (the "Union").  Before the court is Fred Meyer's Motion to Vacate Arbitration Award (#18) and a Motion to Confirm Arbitration Award (#6) filed by Teamsters Local 206.  For the following reasons, I deny Fred Meyer's motion and grant in part and deny in part the motion filed by Teamsters Local 206.

## BACKGROUND

      The Agreement at issue covers employees at Fred Meyer's distribution center in Clackamas, Oregon.  The circumstances leading up to the arbitration are as follows:  In early January 2005, Fred Meyer alerted Union representatives that it intended to use Staffworks, an independent company, to provide employees to perform the tasks of stackdown (loading product onto trucks) and bailing (unloading from trucks returned product).  Staffworks currently performs janitorial work and operates the pallet yard, where transportation pallets are stored and repaired. The newly proposed subcontract to Staffworks would not result in any layoffs of employees with seniority.  Union representatives did not request the opportunity to bargain over the decision.

Page 2 - OPINION AND ORDER

The parties do not dispute that the subcontract did not result in any layoffs, pay losses or disruption of assignments.  The Union filed a grievance.

Arbitrator Robert W. Bradford, chosen from a list of names provided by the Federal Mediation and Conciliation Service, issued a decision in favor of the Union, finding that Fred Meyer violated the Agreement when it issued a subcontract to Staffworks.  The arbitrator ordered Fred Meyer to immediately return the stackdown and bailing work to the Union, post the affected positions, apply retroactive pay, benefits and seniority to the successful bidders, and reimburse the Union for any lost dues for the period in question.  He retained jurisdiction for 60 days to ensure that any remedial issues were resolved.  After the Union notified him that Fred Meyer had filed this action and had not fulfilled its remedial obligations, the arbitrator sent a letter to both parties, dated July 20, 2006, extending his jurisdiction over the remedial portion of his opinion until those issues were resolved.

The main provisions of the Agreement at issue are as follows:

Article 16.5:   Neither the arbitrator nor the Joint Conference Board shall have the power or authority to add to, subtract from, or modify the terms of this Agreement.

Article 21.1:   The Company agrees not to subcontract work to another company where it would result in the lay off of employees working without giving the Union notice and affording the Union the opportunity to bargain concerning such change.  Subcontracting shall not be defined to include the company's past practice and present methods of operation.

Decl. of Richard J. Alli, Jr. in Supp. of Mot. to Vacate Arbitration Award, Ex. A at 18, 19 ("Agreement").

## LEGAL STANDARDS

Review of an arbitration award is "extremely narrow." Federated Dept. Stores v. United Food and Commercial Workers Union, Local 1442, 901 F.2d 1494, 1496 (9th Cir. 1990). The only ground on which to overturn an arbitration award is when the arbitrator has "'dispense[d] his own brand of industrial justice,' issuing an award which failed to 'draw[] its essence from the collective bargaining agreement.'" Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, Intern., 886 F.2d 1200, 1208 (9th Cir. 1989) (quoting Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960)). In addition, if the arbitrator "exceeds the boundaries of the issues submitted to him" or makes an award that is "contrary to public policy" a court can vacate an arbitration award. Federated Dept. Stores, 901 F.2d at 1496 (citations omitted).

## DISCUSSION

Fred Meyer takes issue with the arbitration award in the three following ways: (1) the arbitrator improperly construed an agreement term; (2) the arbitrator was biased; and (3) the arbitrator lacked authority to hear the case because he did not reside in Washington State. Fred Meyer also insists that the arbitrator did not have the authority to retain jurisdiction for an open-ended period of time to resolve remedial issues. For its part, the Union seeks to have the award confirmed and contends that it is entitled to attorney fees and prejudgment interest because Fred Meyer had no valid reason to challenge the arbitrator's decision.

I.    Construction of the Agreement

     A.    Whether the Award "Draws its Essence"

Fred Meyer claims that the arbitrator has modified the agreement, in violation of Article 16.5, by reading the meaning out of the first sentence of Article 21.1. An award does not "draw its essence" from the agreement if the arbitrator violates the terms of the agreement or adds a new term. United Food & Commercial Workers Union, Local 1119 v. United Markets, Inc., 784 F.2d 1413, 1415-16 (9th Cir. 1986) (arbitrator improperly changed the terms of the agreement).

     Again, Article 21.1 provides:

> The Company agrees not to subcontract work to another company where it would result in the lay off of employees working without giving the Union notice and affording the Union the opportunity to bargain concerning such change. Subcontracting shall not be defined to include the company's past practice and present methods of operation.

Agreement at 19.

     Finding the entire clause to be ambiguous, the arbitrator considered past practices of the parties. The arbitrator construed the second sentence to be both a restriction on and a protection of Fred Meyer's ability to subcontract services. In the past, only the pallet yard work and the "lumpers" have been subcontracted and, accordingly, the arbitrator asserted that the language in the second sentence protected Fred Meyer from having to engage in bargaining in order to continue using those subcontracts. However, the language also protected the Union from having current bargaining unit work subcontracted. The arbitrator contended that his interpretation must be correct because, "Without this interpretation, it would permit the company to subcontract bargaining unit work piecemeal. This interpretation of this case is like a single thread which, when pulled, will unravel the entire sweater. . . . [The second sentence] clearly removes from

Page 5 - OPINION AND ORDER

subcontracting decisions, the company's past practice and present methods of operation." Decl. of Richard J. Alli, Jr., Ex. B at 23 ("Arbitration Award").

Fred Meyer argues that the arbitrator's interpretation of the agreement effectively removes any meaning from the first sentence. Under the arbitrator's interpretation, Fred Meyer can only subcontract out the pallet yard work and the lumpers work, or similar work, work which has never been performed by bargaining unit employers. Since this work has never been performed by bargaining unit employers, the union would never have to be notified about its right to bargain for such work. Under the arbitrator's interpretation, Fred Meyer would never be permitted to subcontract work covered by the Agreement.

At oral argument, Fred Meyer further argued that it interprets the second sentence to mean, "Our practice of subcontracting, as it existed when this contract was signed, is not subject to the first sentence." Transcript of Motion Proceedings 9, Oct. 13, 2006. Counsel gave the example of Fred Meyer's janitorial service. "That subcontract, that existing operation, may at times result in layoffs to members of the Union. But we do not need permission of the Union to continue to subcontract with a third party to do janitorial work even if it results in layoffs to the Union." Id. Counsel later explained that the intent of the second sentence was to "preserve the history of subcontracting that Fred Meyer has with this Union without having to be subject to the first sentence." Tr. at 14-15.

The Union argues that this Court is not permitted to review whether the arbitrator interpreted the Agreement correctly, just whether the decision "represents a plausible interpretation of the contract in the context of the parties' conduct[.]" Riverboat Casino, Inc. v. Local Joint Executive Board, 578 F.2d 250, 251 (9th Cir. 1978) (quotation omitted). In addition,

the Union argues that Fred Meyer asked for the arbitrator to rely solely on the first sentence of Article 21.1, but the arbitrator properly construed the entire provision in the context of the agreement as a whole.

The Supreme Court has held, "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). In this case, I cannot say that the arbitrator's interpretation is an implausible one. As the arbitrator opined, although the second sentence may be clear, the entire clause is ambiguous. The second sentence is extremely broad, prohibiting from the definition of subcontracting all past and present operations, not just subcontracting practices. The arbitrator relied on past conduct of the parties to shed light on the meaning of Article 21.1, and attempted to give life to both parts of the clause. I cannot fault his attempt.

B.    "Own Brand of Industrial Justice"

Fred Meyer complains that the arbitrator was dispensing his "own brand of industrial justice" when he interpreted the agreement in the fashion he did. The arbitrator stated that his interpretation was intended to avoid "piecemeal" subcontracting that could erode bargaining work. According to Fred Meyer, this is evidence that the arbitrator intended to prevent the company from subcontracting, regardless of the agreement's language.

The Union responds that Fred Meyer's argument is again based on its belief that the arbitrator improperly interpreted the contract. "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem." Enterprise Wheel & Car Corp., 363 U.S. at 597.

I agree with the Union.  In contrast to the case Fred Meyer relies on, <u>Pacific Motor</u>

<u>Trucking Co. v. Automotive Machinists Union</u>, 702 F.2d 176, 177 (9th Cir. 1983) (per curiam),

the arbitrator did not ignore "clear contract language."  The arbitrator attempted to construe

Article 21.1 by giving meaning to *both* sentences.  I cannot say that the arbitrator was attempting

to "correct what he perceived to be an injustice."  702 F.2d at 177.

II.      <u>Bias of the Arbitrator</u>

Fred Meyer complains that the arbitrator was improperly biased in favor of the Union, as

evidenced by his conversation with Fred Meyer's counsel prior to the hearing.  Counsel gave the

arbitrator his card, and the arbitrator noted that the card did not have an insignia printed on it

demonstrating that the card was produced by union labor.

In order to set aside the decision on the basis of bias, Fred Meyer has the burden of

proving that the arbitrator acted in a way that created "a reasonable impression of partiality."  <u>See</u>

<u>Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.</u>, 756 F.2d 742, 745

(9th Cir. 1985).  "The party alleging evident partiality must establish specific facts which indicate

improper motives" and "[t]he appearance of impropriety, standing alone, is insufficient."  <u>Id.</u> at

746.

The Union argues that the arbitrator's comment about the card does not demonstrate

*evident* partiality.  In addition, the conduct occurred at the beginning of the hearing, and one

would expect Fred Meyer to object if it were really concerned about partiality.

I agree with the Union that this comment does not demonstrate evident partiality.  In

addition, even if Fred Meyer were successful in showing partiality, I find Fred Meyer has waived

this basis for its complaint about the decision.  <u>See id.</u> (employer waived its objection that

members on the arbitration panel had a pecuniary interest when employer did not object at the time they were seated).

Fred Meyer also asserted at oral argument that the arbitrator's reasoning in his opinion demonstrated his bias. Specifically, the arbitrator indicated the need to interpret the agreement so as to prevent Fred Meyer from subcontracting bargaining work "piece meal." However, contrary to Fred Meyer's construction, I read the sentence as the arbitrator attempting to support his decision based on his interpretation of the parties' intent. Accordingly, I reject Fred Meyer's argument that the arbitrator was biased.

III.    The Arbitrator's Residence

The Agreement requires that the arbitrator be chosen from a list of eleven "neutral arbitrators residing from the Northwest . . . ." Agreement, Article 16.4, at 17-18. However, Fred Meyer purportedly recently learned that, although he has a business address and telephone number in Washington, the arbitrator chosen by the parties resides in Texas. Fred Meyer asserts that it reasonably believed the arbitrator was a resident of Washington, but because he is not and because the Agreement requires the arbitrator to be someone who resides in the Northwest, the arbitrator lacked authority to hear the case.

Fred Meyer identifies the following reasons for its belief that the arbitrator resided in Washington: his biography contained a Washington street address and phone number; Texas labor practitioners interviewed had never heard of the arbitrator; the arbitrator was familiar with company and union personnel at the Boeing facility in Seattle; and the arbitrator never mentioned that he was not a resident of the Northwest even after having reviewed the Agreement's provisions requiring same.

Page 9 - OPINION AND ORDER

I find it was unreasonable for Fred Meyer to believe the arbitrator's residence was in Washington. Fred Meyer had extensive contacts with the arbitrator at his Texas location over a period of several months.[1] It never asked the arbitrator why the communications were taking place in Texas as opposed to Washington. The onus was on Fred Meyer to ensure the jurisdictional provision was met. I reject this basis for Fred Meyer's motion.

IV.    Remedy

In his original decision, the arbitrator retained jurisdiction for 60 days to oversee remedial measures, but after the Union alerted him that Fred Meyer had not undertaken those measures and had filed suit instead, the arbitrator issued a letter ruling advising that he would retain jurisdiction until the remedial issues were resolved. Fred Meyer claims that the arbitrator did not have the authority to do so. The company invokes the doctrine *functus officio*, which prohibits an arbitrator from reevaluating an award or resolving a remedial issue not properly before him. See McClatchy Newspapers v. Central Valley Typographical Union No. 46, 686 F.2d 731, 733-34 (9th Cir. 1982).

The Union distinguishes McClatchy by arguing that it prohibited an arbitrator from reopening proceedings to analyze entirely new evidence. Here, the arbitrator's extension of his remedial jurisdiction was neither to evaluate new evidence nor reexamine his decision. In Hughes Aircraft Co. v. Electronic & Space Technicians, Local 1553, 822 F.2d 823, 827 (9th Cir.

---

[1]Indeed, I note that all correspondence from the arbitrator submitted by the parties contained his Texas address and phone number either on his letterhead or beneath his signature line. Only one letter from him contained a box in the corner listing his "Second Business Address" as being in Washington, but even that still contained his Texas phone number. In addition, Fred Meyer submitted no evidence demonstrating that it *ever* sent correspondence to the arbitrator at his Washington address, despite the fact that it has been in contact with the arbitrator since at least August of 2005.

1987), the court stated, "The arbitrator properly retained jurisdiction to decide disputes arising in the administration of the award."

Fred Meyer replies that the arbitrator amended his decision to extend his authority over the remedial portion of the award without conferring with Fred Meyer. The crux of Fred Meyer's argument is that, after having issued his decision, the arbitrator lacked authority to modify that decision to give himself jurisdiction for an indefinite period of time without the prior agreement of the parties.

> It is [a] fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration. The policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.

McClatchy, 686 F.2d at 734.

The doctrine *functus officio* is not applicable where the arbitrator did not attempt to change his opinion in a substantive way. He merely retained jurisdiction to resolve any remedial issues. As a result, his supplemental letter extending his jurisdiction is not invalid.[2]

V.    Union's Request for Attorney's Fees and Prejudgment Interest

The Union is entitled to attorney's fees if Fred Meyer had no justification for refusing to comply with the arbitrator's decision. International Union of Petroleum & Indus. Workers v. Western Indus. Maintenance, Inc., 707 F.2d 425 (9th Cir. 1983). The Union argues this is a run of the mill case, requiring the interpretation of only a limited portion of the agreement. Due to Fred

---

[2]Although I indicated during the oral argument that I thought the arbitrator acted incorrectly, after further reflection I find no error.

Page 11 - OPINION AND ORDER

Meyer's actions, the Union has had to expend money "to vindicate clearly established rights in court." Id. at 428 (internal quotation omitted).

The Union also requests prejudgment interest on unpaid wages. See USF Reddaway, Inc. v. Teamsters Union, Local 162, 230 F. Supp. 2d 1180 (D. Or. 2001). According to the Union, Fred Meyer has been attempting to delay enforcement of the arbitrator's decision to the detriment of the workers.

Fred Meyer correctly responds that attorney fees to the prevailing party are only warranted where the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." International Union of Petroleum & Indust. Workers, 707 F.2d at 428. Here, Fred Meyer contends, the company has serious concerns about the arbitrator's award, including whether the arbitrator had authority to hear the matter, and acted in good faith to have their concerns adjudicated. Fred Meyer offers no response to the Union's request for prejudgment interest.

Fred Meyer's complaint was not brought in bad faith. The company raised sound objections to the arbitrator's award. I decline to award attorney fees or prejudgment interest.


///


///


///


Page 12 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, I deny Fred Meyer's Motion to Vacate Arbitration Award (#18) and grant in part and deny in part the Motion to Confirm Arbitration Award (#6) filed by Teamsters Local 206.  Specifically, with respect to the Union's motion, I confirm the award but deny the Union's request for attorney fees and prejudgment interest.

IT IS SO ORDERED.

Dated this _____9th_____ day of November, 2006.


___/s/ Garr M. King_____
Garr M. King
United States District Judge

Page 13 - OPINION AND ORDER